IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| FAITH ACTION FOR COMMUNITY EQUITY; JOHN DOE 1 AND JANE DOE 1, | ) ) ) | CIVIL NO. 13-00450 SOM/RLP |
| Plaintiff, | ) ) ) | ORDER (1) AFFIRMING MAGISTRATE JUDGE'S DENIAL OF LEAVE TO PROCEED ANONYMOUSLY AND (2) DENYING PLAINTIFFS' MOTION FOR LEAVE TO FILE AN AMENDED COMPLAINT |
| vs. | ) ) | |
| STATE OF HAWAII; HAWAII DEPARTMENT OF TRANSPORTATION; GLENN OKIMOTO, in his official capacity as the Director of the Hawaii Department of Transport, | ) ) ) ) ) ) | |
| Defendants. | ) ) | |

**ORDER (1) AFFIRMING MAGISTRATE JUDGE'S DENIAL
OF LEAVE TO PROCEED ANONYMOUSLY AND (2) DENYING
PLAINTIFFS' MOTION FOR LEAVE TO FILE AN AMENDED COMPLAINT**

**I.      INTRODUCTION.**

On September 06, 2013, Faith Action for Community Equity ("FACE") and John Doe 1 and Jane Doe 1 (the "Doe Plaintiffs") filed a putative class action lawsuit against the State of Hawaii, the Hawaii Department of Transportation ("HDOT"), and its Director Glenn Okimoto. FACE and the Doe Plaintiffs (collectively, "Plaintiffs") alleged in their original Complaint that HDOT's policy of offering the written portion of the state driver's examination in only English is the product of intentional discrimination, and therefore violates the Fourteenth Amendment's guarantee of equal protection, Title VI's prohibition

of disparate treatment in federally funded programs, and Hawaii state law.

The State filed three motions in response to Plaintiffs' original Complaint.  First, the State asked this court to dismiss the Doe Plaintiffs for failure to obtain permission to proceed anonymously.  Second, the State asked that FACE be dismissed for lack of organizational standing.  Finally, the State asked that the Complaint as a whole be dismissed for failure to state a claim.  See ECF Nos. 10, 11, 12. After these motions had been filed, Plaintiffs belatedly sought permission from the Magistrate Judge to proceed anonymously.  ECF No. 14.  On November 22, 2013, the Magistrate Judge issued an order denying Plaintiffs' request.  ECF No. 26.  The Magistrate Judge declined to address the question of whether Plaintiffs' failure to timely file a motion constituted a procedural default and instead denied Plaintiffs' request on the substantive ground that they had failed to demonstrate a sufficient likelihood of serious injury, which, under Ninth Circuit law, is a necessary predicate for proceeding anonymously.  Id.

On the day of this court's hearing on the State's three motions to dismiss, Plaintiffs filed a motion for leave to amend their Complaint, seeking to add an individual as a new named plaintiff.  ECF No. 31.  At the hearing, the parties agreed that Plaintiffs would withdraw their motion for leave to amend and

prepare a new motion for leave to amend, addressing concerns raised by the State's briefing.  The State agreed to withdraw its motions to dismiss in anticipation of Plaintiffs' new motion for leave to amend.

On December 17, 2013, Plaintiffs filed the present second motion for leave to amend their Complaint.  ECF No. 44. Plaintiffs also appealed the Magistrate Judge's order denying their request to proceed with Doe Plaintiffs.  ECF No. 37.  The State filed an opposition to both Plaintiffs' appeal and their motion, arguing that the Magistrate Judge's decision regarding anonymity was correct, and that Plaintiffs should be denied leave to amend because any amendment would be futile.  This court held a single hearing addressing both Plaintiffs' appeal and the motion for leave to amend.

The court now affirms the Magistrate Judge's order denying the Does leave to proceed anonymously.  Because Plaintiffs' proposed First Amended Complaint includes Does, the court's affirmance requires the denial of Plaintiffs' motion for leave to file their proposed FAC.

**II.     BACKGROUND**

Between 2001 and 2010, the HDOT provided translations of the State's written driver's license exam in eight languages: Japanese, Mandarin, Korean, Samoan, Tagalog, Vietnamese, Laotian, and Tongan.  Complaint ¶ 33, ECF No. 1.  In 2010, after adding

new questions, HDOT stopped providing translated versions of the exam. Id. ¶ 36.

FACE is a "faith-based grassroots non-profit organization" whose mission is "to engage[] in actions that challenge[] the systems that perpetuate poverty and injustice." Id. ¶ 12. FACE alleges that one of its "primary areas of advocacy is seeking to address and remedy problems faced by recent immigrants to Hawaii." Id.

Plaintiff John Doe 1 is a Chuukese citizen of the Federated States of Micronesia who has lived on Maui since 2007. Id. ¶ 10. He has allegedly taken and failed the written driver's exam four times since 2008. Id. John Doe 1 alleges that he is continuing to drive without a license because on Maui the "bus service is limited and irregular," and using it would entail "a daily seven-hour commute" to work. Id. ¶ 50. John Doe 1 alleges that he "is a good driver, has never been in an accident, and drove for years in his homeland of Chuuk prior to moving to Hawaii." Id. ¶ 51.

Plaintiff Jane Doe 1 is a Marshallese citizen of the Republic of the Marshall Islands. Id. ¶ 11. She claims to have driven for almost 10 years in the Marshall Islands before moving to Maui in 1999. Id. She has failed the driver's exam in Hawaii twice, and has allegedly "never been offered a translated exam." Id. Jane Doe 1 alleges that she has been "ticketed for not

4

having a license" and told by a judge that "she will go to jail if she drives again without a license." Id. ¶ 53. Nevertheless, she continues to drive without a license "out of necessity so she can get to work to support her family." Id.

The original Complaint includes claims under the Equal Protection Clause, section 601 of Title VI, and section 321C-3 of Hawaii Revised Statutes. Plaintiffs argue that HDOT's "English-only" policy is the product of intentional discrimination against individuals of limited English proficiency ("LEP"), in violation of federal and state law.

The proposed First Amended Complaint adds Tochiro Kochiro Kovac as an individual plaintiff, adds more allegations regarding the injuries suffered by FACE, see, e.g., Proposed FAC ¶¶ 14-16, 52-54, and adds some further allegations challenging the adequacy of the State's proffered reasons for changing its policy. See, e.g., id. ¶¶ 8, 65-66.

### III.     LEGAL STANDARD.

A district court may designate a magistrate judge to determine any nondispositive pretrial motions. 28 U.S.C. § 636(b)(1)(A). A party may appeal a magistrate judge's determination of a pretrial nondispositive matter to the district court, and the district court may modify or set aside any portion of the magistrate judge's order found to be "clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A). Plaintiffs, citing

5

to district court authority, argue that only questions of fact are reviewed under a "clearly erroneous" standard, while questions of law must be assessed *de novo*.  See, e.g, Lovell v. United Airlines, Inc.*,* 728 F. Supp. 2d 1096, 1100 (D. Haw. 2010). The parties dispute whether the Magistrate Judge's determination constitutes a question of fact or of law.  This court need not resolve this dispute because it would affirm the Magistrate Judge's decision applying either standard of review.

**IV.       ANALYSIS.**

"To determine whether to allow a party to proceed anonymously when the opposing party has objected, a district court must balance five factors: '(1) the severity of the threatened harm, (2) the reasonableness of the anonymous party's fears, ... (3) the anonymous party's vulnerability to such retaliation,' (4) the prejudice to the opposing party, and (5) the public interest."  Doe v. Kamehameha Sch./Bernice Pauahi Bishop Estate, 596 F.3d 1036, 1042 (9th Cir. 2010) (quoting Does I thru XXIII v. Advanced Textile Corp., 214 F.3d 1058, 1068 (9th Cir. 2000).[1]

---

[1] There is some dispute between the parties as to whether this five-part test, which derives from the Ninth Circuit's decision in Advanced Textile, is applicable whenever a plaintiff seeks anonymity, or only when there is a threat of retaliation by a private party.  The Magistrate Judge appeared to read Advanced Textile as only requiring the use of the five-part test when *private* retaliation is threatened.  Therefore, he declined to apply the Advanced Textile test "because the Doe Plaintiffs d[id] not allege that they have been threatened with retaliatory

"In this circuit, the common law rights of access to the courts and judicial records are not taken lightly." Kamehameha Sch./Bernice Pauahi Bishop Estate, 596 F.3d at 1042. The "general rule [is that] the identity of the parties in any action . . . should not be concealed." United States v. Stoterau, 524 F.3d 988, 1012 (9th Cir. 2008) (internal quotation omitted). This presumption is significant in light of nearly every civil litigant's interest in proceeding anonymously. Any individual who is challenging a state policy, revealing personal information, or engaging in unpopular litigation would naturally *prefer* not to have to reveal his or her identity. But covert litigation would be pervasive in the federal courts if anonymity were granted in all such situations. Instead, it is only in "*exceptional cases* [that] the need for party anonymity overwhelms the presumption of disclosure mandated by procedural custom."

---

physical or mental harm" but "[i]nstead . . . assert that they are compelled to admit their intention to engage in illegal conduct and are at risk for criminal prosecution." ECF No. 26. at 5 n.2.  Instead of assessing the Advanced Textile factors, the Magistrate Judge appeared to conduct a more general balancing test between the "Doe Plaintiffs' need for anonymity" and the "prejudice to defendants and the public interest."  Plaintiffs take issue with the Magistrate Judge's failure to precisely apply the Advanced Textile factors.  However, the general balancing test utilized by the Magistrate Judge appears to simply be a more abstract version of the Advanced Textile test, and Plaintiffs fail to explain how the Magistrate Judge's decision would have materially differed if he had labeled his analysis under the Advanced Textile rubric.  In any event, this court concludes that, even applying the Advanced Textile factors as Plaintiffs request, the Does are not entitled to proceed anonymously.

Doe v. Stegall, 653 F.2d 180, 185 (5th Cir. 1981) (emphasis added).

This court recognizes that fear of criminal prosecution--and potentially subsequent deportation--is indeed a "serious injury." There is precedent for "permit[ing] plaintiffs to use pseudonyms . . . when the anonymous party is compelled to admit [his or her] intention to engage in illegal conduct, thereby risking criminal prosecution." Advanced Textile Corp., 214 F.3d at 1068; see also S. Methodist Univ. Ass'n of Women Law Students v. Wynne & Jaffe, 599 F.2d 707, 713 (5th Cir. 1979) (noting that anonymity may be warranted when plaintiffs must "admit that they either had violated state laws or government regulations or wished to engage in prohibited conduct").

However, even though criminal prosecution undoubtedly constitutes a serious injury, the "fear of severe harm is irrelevant if the plaintiffs do not *reasonably* fear severe harm." Kamehameha Sch./Bernice Pauahi Bishop Estate, 596 F.3d at 1044 (emphasis added). In Kamehameha, the Ninth Circuit held that the child plaintiffs in that case did not reasonably fear severe harm, despite a record that included direct evidence of threats made to them as a result of their participation in the litigation. The panel held that the district court did not abuse its discretion in concluding that the children's fear was

8

unreasonable, because the threats made against the children were not credible.

The record in Kamehameha was considerably thicker than the speculative allegations made by Plaintiffs here. Plaintiffs do not allege or provide even a scintilla of evidence that the State intends to retaliate against them through criminal prosecution. Instead, Plaintiffs rely entirely on the allegation that some of the Does have been stopped by the police for driving illegally. Those allegations provide no support for the proposition that the Does risk criminal prosecution *by participating in this litigation*. Prior police stops speak only to the fact that any driver might be stopped by the police for, say, a traffic inspection, random alcohol check, or other matters, and that, by driving without a license, the Does risk prosecution for reasons wholly independent of whether they are litigants.

At the hearing on the present appeal, Plaintiffs' counsel stressed that the context of this case was "nearly identical" to that of Advanced Textile, because, in that case, the Doe plaintiffs were similarly threatened with prosecution, deportation, and loss of employment. But simply listing a series of grave consequences is unavailing if Plaintiffs are unable to at least plausibly allege that those consequences may indeed occur.

9

In <u>Advanced Textile</u>, foreign workers sought to bring a Fair Labor Standards Act action against their employers in Saipan in the Commonwealth of the Northern Mariana Islands. Those workers were threatened "on numerous occasions . . . [that] making complaints about their working conditions . . . [could lead to] deportation, arrest and imprisonment." <u>Advanced Textile Corp.</u>, 214 F.3d at 1071. The court specifically noted that the employers could "terminate plaintiffs at will and apparently also ha[d] the power to have foreign workers deported almost instantly." <u>Id.</u> at 1072. The court further noted that "evidence of collaboration between [the employers] . . . and China's government suggests that threats [of imprisonment] may be carried out." <u>Id.</u> at 1071. In other words, the plaintiffs in <u>Advanced Textile</u> had been directly threatened with deportation and potential imprisonment in connection with their participation in litigation.

While stressing similarities between the penalties that face them and those that faced the <u>Advanced Textile</u> plaintiffs, Plaintiffs in the present case ignore the fundamental distinction that, here, no State official has threatened to prosecute the Does based on their status as litigants. Moreover, the surrounding facts of the Does' case makes such retaliatory prosecution exceedingly unlikely. Retaliatory prosecution would require elaborate collaboration between various independent

governmental agencies.  Assuming the Complaint in this civil case would be insufficient to secure a criminal conviction by itself, the State of Hawaii would presumably have to enlist the aid of county police officers to watch for and arrest the Does, and then convince a county prosecutor to undertake a retaliatory prosecution.  No allegation in the Complaint suggests such an unlikely outcome.

At the hearing, Plaintiffs' counsel suggested that retaliation could be undertaken by a "rogue officer" who read about this litigation and decided to punish the Does for challenging the State's policy.  Plaintiffs described possible surveillance by such an officer outside the Does' homes, presumably for the purpose of catching the Does in the act of getting into their cars and driving.  Leaving aside the issue of how a "rogue officer" would find the Does, whose names are not in any drivers' database, Plaintiffs provide no reason that an officer would become so incensed by a legal challenge to the drivers' exam that he or she would seek out and arrest the litigants involved.  Plaintiffs say that one cannot speculate as to what goes through the mind of an individual who is, by definition, "rogue."  But *any* plaintiff challenging a public policy can speculate that some hypothetical "rogue officer" could become obsessed with defending that policy.  Granting anonymity based on the mere possibility of a "rogue officer" would

therefore require courts to grant anonymity as a matter of course in litigation challenging governmental action.

Instead, the relatively few cases in which litigants have been given leave to proceed anonymously based on fear of criminal prosecution have all involved politically charged and controversial issues. In such exceptional cases, it is more likely that prosecution might be used as a tool to suppress the litigation, or that individual officers could feel so strongly about an issue as to personally retaliate against the plaintiffs. See, e.g., Roe v. Wade, 410 U.S. 113, 120 (1973) (challenge to Texas law criminalizing abortion); Doe v. Commonwealth's Attorney for City of Richmond, 403 F. Supp. 119, 120 (E.D. Va. 1975) (challenge to Virginia's law criminalizing sodomy); Doe v. Shapiro, 302 F. Supp. 761, 761-62 (D. Conn. 1969) (plaintiffs' challenge to Connecticut welfare regulation that necessarily required plaintiffs to admit they had engaged in the crime of adultery). There is no allegation before this court, nor any other reason to believe, that the HDOT's policy is the kind of hot-button social issue that could potentially inspire such reactions. Plaintiffs do nothing to distinguish their case from the usual civil case challenging government policy. While the State may prefer not to litigate this action, there is nothing to suggest that it might undertake a bad-faith arrest or prosecution to stifle it. Moreover, given the potential presence of other

named Plaintiffs, any criminal prosecution would have no effect on the suit's ultimate viability, making it even less likely that the State would initiate a criminal case as a means of suppression.

Plaintiffs' purported reasons for requiring anonymity are unavailing for a separate reason.  As the Magistrate Judge pointed out, nothing in the nature of Plaintiffs' claim "compels" the Does to reveal that they are currently breaking the law.  A woman challenging a state's abortion law, for example, may be compelled to admit her intent to violate that law to ensure she has standing to challenge it.  By contrast, the Does can assert sufficient injury-in-fact to trigger Article III standing by alleging an inability to pass the driver's exam in English.  There is no need for them to also affirmatively state that they are breaking the law.  If the Does' superfluous statements are sufficient to require anonymity, then any party could manufacture the need for anonymity by gratuitously alleging a violation of law.  In short, the Does' voluntary and unnecessary admission to criminal activity, standing alone, cannot allow them to proceed anonymously.

Instead of offering allegations or evidence supporting the reasonableness of the Does' fears, Plaintiffs choose to emphasize other parts of the Advanced Textile test--the serious consequences of criminal prosecution, and the lack of prejudice

13

to Defendants flowing from the Does' anonymity.  In particular, Plaintiffs argue that, because arguments at the motion to dismiss stage are purely legal and do not depend on the precise identities of the parties, it would not greatly prejudice Defendants at this stage of the litigation for the Does to proceed anonymously.  See Advanced Textile, 214 F.3d at 1068 ("The court must also determine the precise prejudice at each stage of the proceedings to the opposing party, and whether proceedings may be structured so as to mitigate that prejudice.").  As Kamehameha makes clear, however, that rationale is only persuasive if Plaintiffs are able to allege facts supporting the reasonableness of their fear of retaliation.  Simply stating that one is afraid of retribution is not enough to justify anonymity, even at the motion to dismiss stage.

  At most, Plaintiffs have noted that a state court judge has indicated that a prison sentence could be imposed on a Doe for continued unlicensed driving.  But nothing Plaintiffs have alleged suggests that a prison sentence would be imposed in retaliation for participating in the present litigation.  And, of course, before any sentence could be imposed, the Doe would have to have been cited for a violation of the law and found guilty, circumstances that have to be tied to their participation in the present lawsuit to have any relevance to their request to proceed anonymously.

Overall, Plaintiffs simply do not provide sufficient allegations supporting the reasonableness of their fears. Plaintiffs could insulate themselves from prosecution by removing allegations regarding their criminality from the Complaint. Even if they do not do that, there is no reason to believe their admission will trigger a conspiracy between the State, any County prosecutor, and police officials designed to intimidate a nonessential party from pursuing litigation that raises no emotion-charged issue.

"The federal courts must be safe havens for those who seek to vindicate their rights [and n]o litigant should fear for his safety, or that of his family, as a condition of seeking justice." Doe ex rel. Doe v. Kamehameha Sch./Bernice Pauahi Bishop Estate, 625 F.3d 1182 (9th Cir. 2010) (Kozinski, J., dissenting from denial of rehearing en banc). But at the same time, allowing anonymity to be triggered by wholly speculative fears of reprisal and to be based on unnecessary admissions of criminality would make the federal courts a haven for secret litigation. The public character of judicial proceedings would be severely damaged if anonymity were so freely granted. "A party may [only] preserve his or her anonymity in judicial proceedings in special circumstances when the party's need for anonymity outweighs prejudice to the opposing party and the public's interest in knowing the party's identity." Advanced

Textile, 214 F.3d at 1068.  Having failed to demonstrate any need for the Does' anonymity, Plaintiffs do not establish that this is the "exceptional case" in which anonymity is justified.

Because the Does may only remain in this lawsuit under their real names, the court will not allow Plaintiffs to file their proposed First Amended Complaint, which contains pseudonyms in the caption.  Therefore, Plaintiffs' motion for leave to amend their Complaint is denied.

The State asks the court to deny Plaintiffs' motion for leave to amend on the further ground that granting such leave would be futile.  Given the presence of anonymous individuals in the case caption, the court need not address the futility issue here.  See Miller v. Rykoff-Sexton, Inc., 845 F.2d 209, 214 (9th Cir. 1988) ("[A] proposed amendment is futile only if no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim . . . .").

Plaintiffs may bring another motion for leave to file an amended Complaint, and may, in the process, supplement and strengthen their substantive allegations to overcome the State's concerns.  "[T]he underlying purpose of Rule 15(a) ... [is] to facilitate decisions on the merits, rather than on technicalities or pleadings."  In re Morris, 363 F.3d 891, 894 (9th Cir. 2004). It would be unfortunate if important legal questions of great

public interest are placed beyond this court's review by a party's inability to get a pleading on file.

To facilitate review on the merits, Plaintiffs and the State are directed to confer no later than February 5, 2014, regarding the possibility of entering into a stipulation regarding another proposed First Amended Complaint. Without waiving any potential challenge to the sufficiency of the pleadings through a motion to dismiss, the State should consider whether Plaintiffs' future amendments are sufficient to allow the parties to stipulate to the filing of a First Amended Complaint.

Until that time, this court's denial of Plaintiffs' motion for leave to file their proposed First Amended Complaint means that the original Complaint remains the operative pleading in this action, and the Does are dismissed as Plaintiffs from that Complaint.

**V.      CONCLUSION**

The Magistrate Judge's order denying Plaintiffs leave to proceed anonymously is affirmed. Plaintiffs' motion for leave to file an amended Complaint is denied. Any new motion for leave or stipulation to the filing of an amended Complaint must be submitted no later than February 19, 2014, and either document must include as an attachment the proposed amended pleading.

```
          IT IS SO ORDERED.

          DATED: Honolulu, Hawaii, January 29, 2014.
```



```
                              /s/ Susan Oki Mollway
                             Susan Oki Mollway
                             Chief United States District Judge
```

Faith Action For Community Equity; John Doe 1 and Jane Doe 1, v. State of Hawaii; Hawaii Department of Transportation; Glenn Okimoto, in his official capacity; Civ. No. 13-00450 SOM/RLP; ORDER (1) AFFIRMING MAGISTRATE JUDGE'S DENIAL OF LEAVE TO PROCEED ANONYMOUSLY AND (2) DENYING PLAINTIFFS' MOTION FOR LEAVE TO FILE AN AMENDED COMPLAINT.