IN THE UNITED STATES DISTRICT COURT

                        FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| FAITH ACTION FOR COMMUNITY ) <br> EQUITY; TOCHIRO KOCHIRO ) <br> KOVAC, individually and on ) <br> behalf of a class of persons ) <br> in the State of Hawaii who, ) <br> because of their national ) <br> origins, have limited English ) <br> proficiency ) <br> ) <br>       Plaintiff, ) <br> ) <br>   vs. ) <br> ) <br> STATE OF HAWAII; HAWAII ) <br> DEPARTMENT OF TRANSPORTATION; ) <br> GLENN OKIMOTO, in his ) <br> official capacity as the ) <br> Director of the Hawaii ) <br> Department of Transport, ) <br> ) <br>       Defendants. ) <br> _____ ) | CIVIL NO. 13-00450 SOM/RLP <br><br> ORDER DENYING SECOND MOTION <br> TO DISMISS |

**ORDER DENYING SECOND MOTION TO DISMISS**

**I.      INTRODUCTION.**

Plaintiffs Faith Action for Community Equity and Tochiro Kochiro Kovac (collectively, "FACE") bring this putative class action against the State of Hawaii, the Hawaii Department of Transportation ("HDOT"), and its Director.  FACE alleges that HDOT's policy of offering the state driver's examination in English only is the product of intentional discrimination, and therefore violates the Fourteenth Amendment's guarantee of equal protection and Title VI's prohibition against national origin discrimination in federally funded programs.

On April 28, 2014, the court denied a motion to dismiss challenging FACE's organizational standing to bring this lawsuit. See ECF No. 80. The court ruled that the allegations of the First Amended Complaint sufficiently alleged that FACE had suffered an injury-in-fact by diverting its resources to combat the English-only policy. In relevant part, FACE had alleged that it had provided taxi services to take individuals with limited English to and from meetings and workshops at which FACE's goals and plans were discussed and the individuals' input was received. See ECF No. 80, PageID # 1420. In so ruling, the court left open the possibility of another motion challenging FACE's organizational standing after further discovery:

> Defendants might, following discovery, be able to present evidence demonstrating that these workshops do not require the participation of individuals affected by the English-only policy, that the workshops are not part of FACE's primary work, or that no resources have been diverted from other areas to provide the "taxi-service." However, at this stage, the allegations in the Complaint suffice to preclude dismissal on standing grounds.

Id.

Presently before this court is a Second Motion to Dismiss, which raises a factual challenge to FACE's organizational standing. This motion argues that completed discovery establishes that FACE did not divert any resources to

2

provide the taxi service.  The court denies the Second Motion to Dismiss.

**II.      BACKGROUND.**

The First Amended Complaint alleges that, between 2001 and 2009, HDOT offered the written portion of the state's driver's license exam in eight languages besides English: Japanese, Mandarin, Korean, Samoan, Tagalog, Vietnamese, Laotian, and Tongan.  First Amended Complaint ¶ 39, ECF No. 60, PageID # 915.  However, in 2009, when a single new question was added to the exam, HDOT stopped providing translated exams.  Id. ¶ 42, PageID # 916.

FACE is a "faith-based grassroots non-profit organization" whose mission is "to engage[] in actions that challenge[] the systems that perpetuate poverty and injustice." Id. ¶¶ 11-12, PageID # 907.  The First Amended Complaint describes FACE's work as "conduct[ing] social, economic and community activities, and provid[ing] leadership development though meetings and workshops."  Id. ¶ 12, PageID # 907.  One of FACE's "primary areas of advocacy involves addressing and remedying problems faced by recent immigrants to Hawaii."  Id. ¶ 13, PageID # 908.  FACE claims that one of the ways "FACE accomplishes [this] work is through meetings and workshops with the individual members of its member institutions."  Id. ¶ 12, PageID # 908.  FACE also claims that these meetings and workshops

3

are used to help "train[] [new immigrants] to advocate for themselves." Id. ¶ 77. PageID # 925.

The First Amended Complaint alleges that FACE spent "around $4,500 in staff time and resources during the past two years for what essentially amounts to taxi service for members [with limited English proficiency] . . . who could not otherwise attend FACE activities." Id. ¶ 81, PageID # 926. The First Amended Complaint further alleges that "FACE spends its resources to get these people to its activities because their absence would frustrate FACE's mission and interfere with FACE's ability to accomplish its goals." Id.

On April 28, 2014, the court issued an order denying a motion to dismiss that challenged FACE's organizational standing. The court ruled that the allegations concerning the taxi service were sufficient to allege an injury-in-fact for standing purposes. See ECF No. 80, PageID # 1420. Since then, the parties have conducted discovery, including the deposition of Kimberly Harman, FACE's representative for a deposition under Rule 30(b)(6) of the Federal Rules of Civil Procedure. See ECF No. 123-4.

Harman is FACE's Director of Policy & Development. See Decl. of Kim Harman ¶ 2, ECF No. 67-1, PageID # 1150. Harman testified that FACE deals with many immigrants who have difficulty speaking and understanding English. At FACE meetings,

FACE provides leadership development and training to these people and teaches them how to advocate for themselves, while the immigrants help FACE identify issues of importance to them. Id. ¶¶ 4, 7, 8 PageID #s 1151-52. Harman says that many of these people are unable to legally drive because they cannot pass the English-language driver's license exam. Id. ¶ 12, PageID # 1152. This makes it difficult for these people to get to and participate in FACE meetings. Id. ¶ 13, PageID # 1153.

Harman testified that she drove Anna Jakeo, Santiana Benjamin, and others to multiple meetings. See ECF No. 123-4 at 74, PageID # 1756. Other individuals who used the taxi-like service included women whose first names are Mai and Cashmery. See id. at 71, ECF No. 133-3, PageID # 2089. Apparently, Harman used her own car to drive these individuals to the meetings and did not seek reimbursement from FACE for gas, upkeep, or insurance. See id., ECF No. 123-4 at 83-84, PageID #s 1758-59. Harman testified that she is a salaried employee who received no extra compensation for the taxi service she provided. Id. at 84-85, PageID # 1759-60. Harman testified that Veronica Teico also provided taxi service and was paid her hourly wage while providing that service. Id.

Harman did not keep accounting records for the taxi service. Id. at 95, PageID # 1765.

Harman testified that FACE's 2013 budget did not set aside money for "the drivers license campaign." Id. at 138, PageID # 1784. FACE claims to have diverted resources because, while it had not planned to spend anything in connection with the driver's license issue, it ended up paying its salaried and hourly workers to provide taxi services to individuals with limited English proficiency who could not drive themselves to FACE meetings because they could not pass the untranslated driver's license test. See id. at 143, PageID # 1787.

### III.  LEGAL STANDARDS.

"Rule 12(b)(1) jurisdictional attacks can be either facial or factual." White v. Lee, 227 F.3d 1214, 1242 (9th Cir. 2000). "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction. By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004).

When the challenge is facial, all allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party. Fed'n of African Amer. Contractors v. City of Oakland, 96 F.3d 1204, 1207 (9th Cir. 1996). In a facial attack on jurisdiction, the court "confin[es]

the inquiry to allegations in the complaint." Savage v. Glendale Union High Sch., Dist. No. 205, Maricopa Cnty., 343 F.3d 1036, 1040 n.2 (9th Cir. 2003).

In a factual attack on jurisdiction, however, a court "may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment." Wood v. City of San Diego, 678 F.3d 1075, 1083 n.8 (9th Cir. 2012) (internal quotation omitted). In such a challenge, "[t]he court need not presume the truthfulness of the plaintiff's allegations." Id. "Once the moving party has converted the motion to dismiss into a factual motion by presenting affidavits or other evidence properly brought before the court, the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction." Savage, 343 F.3d at 1039 n.2.

The present motion is a factual attack on FACE's organizational standing.

**IV.    ANALYSIS.**

In the Ninth Circuit, "an organization may satisfy the Article III requirement of injury in fact if it can demonstrate: (1) frustration of its organizational mission; and (2) diversion of its resources to combat the particular [] discrimination in question." Smith v. Pac. Props. & Dev. Corp., 358 F.3d 1097, 1105 (9th Cir. 2004). In the court's previous order, ECF No. 80,

7

the court determined that the First Amended Complaint sufficiently alleged facts demonstrating FACE's organizational standing based on FACE's provision of an "informal taxi service" to ferry individuals to FACE meetings and workshops.  The court, however, noted that Defendants might file another motion if discovery demonstrated "that these workshops do not require the participation of individuals affected by the English-only policy, that the workshops are not part of FACE's primary work, or that no resources have been diverted from other areas to provide the 'taxi-service.'"  ECF No. 80, PageID # 1420.

      HDOT now seeks dismissal, arguing that FACE never actually expended funds for the informal taxi service.  HDOT says FACE did not budget anything for the taxi service, and did not pay overtime or otherwise reimburse its salaried and hourly employees who drove their personal cars to transport individuals to and from FACE meetings and workshops.

      The court is not convinced that FACE must expend earmarked dollars to be said to have diverted resources.  Nor is the court convinced by HDOT's assertion that, to have diverted resources for standing purposes, FACE had to have had its governing board decide that staff should spend time providing the informal taxi service, rather than have had an employee act on her own to institute the informal taxi service to effectuate the board's plans.

The very nature of a diversion of resources contemplates a change in the organization's planned use of resources. FACE has sufficiently demonstrated that its employees spent "staff time" providing the informal taxi service, even assuming FACE's board did not expressly direct the creation of the informal taxi service. This "staff time" is a sufficient resource for purposes of the organizational standing test, because the time spent providing the taxi service was time the employees could have spent working on other FACE projects.

In a different context, the Supreme Court has recognized that staff time can be considered a resource. Washington v. Harper, 494 U.S. 210 (1990), involved a challenge to a policy that allowed a prison to treat a mentally ill prisoner with antipsychotic drugs against his will and without a judicial hearing. The Supreme Court upheld the policy, noting, "Nor can we ignore the fact that requiring judicial hearings will divert scarce prison resources, both money and the staff's time, from the care and treatment of mentally ill inmates." Id. at 232.

In Crawford v. Marion County Election Board, 472 F.3d 949, 951 (7th Cir. 2007), the Seventh Circuit determined that the Democratic Party had standing to challenge an Indiana law requiring a voter to have a government-issued photo identification to vote. The court reasoned that the Democratic

Party had to devote resources to getting Democrats to the polls who would otherwise be discouraged by the new law from voting. The court noted, "The fact that the added cost has not been estimated and may be slight does not affect standing, which requires only a minimal showing of injury."

Other cases have recognized that the diversion of staff time can support standing. In Miami Valley Fair Housing Center, Inc. v. Connor Group, 725 F.3d 571, 576 (6th Cir. 2013), for example, the Sixth Circuit determined that a diversion of resources in the form of "staff time and energy" was sufficient to support an injury for standing purposes. Similarly, Southern California Housing Rights Center v. Los Feliz Towers Homeowners Association, 426 F. Supp. 2d 1061, 1069 (C.D. Cal. 2005), determined that an organization had standing "based on loss of financial resources in investigating this claim and diversion of staff time from other cases to investigate the allegations here."

At the hearing on the present motion, HDOT conceded that "staff time" can be a resource for standing purposes. However, HDOT disputed whether FACE had actually used "staff time" on a taxi service. For example, HDOT contended that, because FACE's board had not approved the use of staff time for the taxi service, FACE could not be said to have diverted resources as an organization. The court is unpersuaded by this argument. Even if Harman decided on her own to provide the

10

"informal taxi service," that decision implemented the board's undisputed interest in addressing the problems faced by immigrants. In providing the taxi service, FACE can be said to have diverted its resources to combat the alleged discrimination--the failure to provide translated driver's license exams that allegedly amounted to national origin discrimination, something it was FACE's organizational mission to address. See Smith, 358 F.3d at 1105.

The court is not persuaded by HDOT's argument that the three-year gap between when HDOT stopped providing translated driver's license exams and when FACE started its "informal taxi service" establishes the absence of a connection between the two events. That is an argument concerning causation that is for the trier of fact to resolve.

HDOT argues that FACE cannot prove that it diverted its resources because it has no formal record of how much time FACE employees actually spent driving their personal cars to provide the informal taxi service. However, HDOT cites no authority requiring a formal record or accounting. This court knows of nothing preventing FACE from establishing that it diverted resources through testimony that its employees spent "staff time" as a result of HDOT's policy that could have been used elsewhere. No formal budget, accounting, or written record is necessary to establish a "concrete and particularized" injury for standing

11

purposes. Even if FACE employees can only estimate the time spent, that does not mean that no injury was suffered, only that they may not be able to establish the exact extent of the injury suffered.

Nor is HDOT persuasive in arguing that the informal taxi service was unnecessary because FACE meetings could have been held electronically. Even if FACE could have had meetings via conference calls or video, that does not mean FACE was limited to doing so. In fact, because the individuals who were transported had limited English proficiency, it is not at all clear that they could have effectively participated electronically. Those individuals might have needed the help of translators or the nonverbal cues provided by face-to-face interaction.

HDOT is similarly unpersuasive in arguing that FACE should have chosen different locations for its meetings--locations better suited to conference calls than a McDonald's restaurant. HDOT is second-guessing the need for the informal taxi service, which has nothing to do with whether resources were in fact diverted.

Finally, HDOT complains that FACE cannot substantiate what FACE says was $65,000 spent in advocacy efforts in this litigation. This court's earlier order determined that FACE's advocacy efforts in this litigation were not an injury-in-fact

12

for standing purposes.  See ECF No. 80 at 12-15, PageID # 1416-19.  This court is basing FACE's organizational standing on the informal taxi service, which requires no proof of $65,000 in advocacy expenses.  Nor does the court need to address FACE's claim that it has sustained $30,000 in damages based on lost efficacy.  Standing in this case is not dependent on damages of any particular dollar amount.

**V.      CONCLUSION**

The Second Motion to Dismiss for lack of standing is denied.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, February 20, 2015.



/s/ Susan Oki Mollway
Susan Oki Mollway
Chief United States District Judge

Faith Action For Community Equity, et al. v. State of Hawaii; Hawaii Department of Transportation; Glenn Okimoto, in his official capacity; Civ. No. 13-00450 SOM/RLP; Order Denying Second Motion to Dismiss