IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| FAITH ACTION FOR COMMUNITY EQUITY, et al., | ) ) ) ) | CIVIL NO. 13-00450 SOM/RLP |
| Plaintiffs, | ) ) ) | ORDER GRANTING MOTION FOR ATTORNEYS' FEES |
| vs. | ) ) ) | |
| HAWAII DEPARTMENT OF TRANSPORTATION, et al., | ) ) ) ) | |
| Defendants. | ) ) | |
| _____ | ) | |

**ORDER GRANTING MOTION FOR ATTORNEYS' FEES**

**I.       INTRODUCTION.**

         The court has before it a motion for attorneys' fees
filed by Plaintiffs Faith Action for Community Equity ("FACE")
and Tochiro Kochiro Kovac (collectively, "Plaintiffs").
Plaintiffs seek $50,000.00 in attorneys' fees pursuant to a
settlement agreement between the parties in this case.  The
motion is granted.

**II.      BACKGROUND.**

         The court and the parties are familiar with the factual
background of this case.  The court, therefore, includes only
information relevant to disposition of the motion for attorneys'
fees in this section.

         The parties reached a settlement agreement on the eve
of trial.  Pursuant to that agreement, the issue of attorneys'
fees was reserved for this court's resolution according to "(1)

whether the terms of the settlement agreement and accompanying documents entitle Plaintiffs to be deemed prevailing parties; and (2) whether Plaintiffs are responsible for causing Defendants to change their position by offering translated [driver's license] examinations in 2014." See ECF No. 276-3, PageID # 6358.  The parties agreed that any award of attorneys' fees could not exceed $50,000.00.  See id.

On June 29, 2015, Plaintiffs filed their motion for attorneys' fees, seeking an award of $50,000.00 pursuant to the settlement agreement.  See ECF No. 276, PageID # 6319. Plaintiffs contend that the terms of the settlement agreement, along with the stipulation for dismissal and order, make them prevailing parties.  See ECF No. 276-1, PageID # 6326. Plaintiffs also contend that they are responsible for Defendants' decision to offer translated driver's license examinations in 2014.  See id.  Plaintiffs note that the $50,000.00 requested is a fraction of the $382,108.40 in attorneys' fees incurred from September 2013 to June 1, 2015.  See id. at PageID # 6327.

In their opposition, Defendants contend that Plaintiffs lack standing to pursue an award of attorneys' fees.  See ECF No. 279, PageID #s 6610-16.  In the alternative, Defendants challenge Plaintiffs' alleged status as prevailing parties and object to

certain fee entries.  See id. at PageID #s 6616-35.

**III.     MR. KOVAC IS A PARTY TO THE SETTLEMENT AGREEMENT.**

Defendants contend that Mr. Kovac is not a party to the settlement agreement and therefore is not entitled to an award of attorneys' fees pursuant to that agreement.  See ECF No. 279, PageID #s 6608, 6619.  Defendants are incorrect.  The settlement agreement specifically discusses the circumstances under which "Plaintiffs" will be entitled to attorneys' fees.  See ECF No. 276-3, PageID # 6358.  Further, agreement to the terms of the settlement agreement was the consideration Defendants provided to Mr. Kovac in exchange for dismissal of his claims.

**IV.      PLAINTIFFS ARE PREVAILING PARTIES.**

A party that prevails under 42 U.S.C. § 1983 may be awarded a reasonable attorney's fee.  See 42 U.S.C. § 1988(b). "Litigation that results in an enforceable settlement agreement can confer 'prevailing party' status on a plaintiff."  La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest, 624 F.3d 1083, 1089 (9th Cir. 2010).  The Ninth Circuit uses the following three-part test in determining whether a settlement agreement confers prevailing party status: "(1) judicial enforcement; (2) material alteration of the legal relationship between the parties; and (3) actual relief on the merits of the plaintiff's claims."  Id. (internal quotation marks and brackets omitted).

3

The parties agree that their settlement agreement meets the first prong of the three-part test.  See ECF No. 276-1, PageID # 6336; ECF No. 279, PageID # 6609.  This court's retention of jurisdiction over the parties' settlement agreement constitutes judicial enforcement for prevailing party purposes.  See Jankey v. Poop Deck, 537 F.3d 1122, 1130 (9th Cir. 2008) (finding sufficient judicial imprimatur when "the district court dismissed Plaintiff's case pursuant to a settlement agreement between the parties under which the court retained jurisdiction to enforce the settlement"); Richard S. v. Dep't of Developmental Servs. of Cal., 317 F.3d 1080, 1088 (9th Cir. 2003) ("Through their legally enforceable settlement agreement and the district court's retention of jurisdiction, plaintiffs obtained a 'judicial imprimatur' that alters the legal relationship of the parties." (internal quotation marks omitted)); Haw. Def. Found. v. City & Cnty. of Honolulu, Civ. No. 12-00469 JMS-RLP, 2014 WL 2804445, at *3 (D. Haw. Apr. 22, 2014) ("A legally enforceable settlement agreement that provides that the court retains jurisdiction over the issue of attorneys' fees is sufficient to convey 'judicial imprimatur' over the settlement.").

Defendants contend, however, that the settlement agreement does not satisfy the second and third prongs of the three-part test.  See ECF No. 279, PageID # 6609.  This court disagrees.

4

The settlement agreement materially altered the legal relationship between the parties.  A material alteration occurs when a settlement agreement "allows one party to require the other party 'to do something it otherwise would not be required to do.'"  See Jankey, 537 F.3d at 1130 (quoting Fischer v. SJB-P.D. Inc., 214 F.3d 1115, 1118 (9th Cir. 2000)).  In this case, the settlement agreement requires Defendants to continue offering translated driver's examinations for five years in the twelve languages offered at the time of the agreement.  See ECF No. 276-3, PageID # 6358.  The agreement also bars withdrawal of translated examinations if additional questions need to be added to the examinations.  See id.  Those additions must be made without any lapse in the availability of translated examinations. See id.  Pursuant to the settlement, the parties are also obligated to work cooperatively to review the Chuukese translation of the driver's examination for possible translation to another dialect.  See id.  Each of these terms imposes a requirement that Defendants have all along maintained they are not otherwise subject to.  If Defendants fail to meet any of these obligations, Plaintiffs may enforce them.  See id.

Although Defendants contend that the enforcement provision is just a "standard provision" and that "it is not a material difference that FACE can revisit the terms of its non-monetary settlement," ECF No. 279, PageID # 6619, neither of

5

those statements is persuasive.  The United States Supreme Court notes that a "material alteration of the legal relationship between the parties occurs [when] the plaintiff becomes entitled to enforce a judgment, consent decree, or settlement against the defendant."  Farrar v. Hobby, 506 U.S. 103, 113 (1992).  That is because, through enforcement, "the plaintiff can force the defendant to do something he otherwise would not have to do." See Fischer, 214 F.3d at 1118.

According to Defendants, "[t]he State agreed to certain conduct . . . that it was already going to implement."  ECF No. 279, PageID # 6618.  Even if this is so, the agreement legally requires those actions and permits this court to enforce the agreement's terms if a violation occurs.  See Trabajadores, 624 F.3d at 1089-90 ("Nor is there any doubt that the legal relationship between the parties was materially altered by the agreement. . . . . [W]hile everything Appellees are required to do as a result of the settlement agreement is couched in terms of existing policies, Appellees were not necessarily subject to the jurisdiction of a federal court for violating those policies until the settlement agreement was signed."); Saint John's Organic Farm v. Gem Cnty. Mosquito Abatement Dist., 574 F.3d 1054, 1059 (9th Cir. 2009) ("[E]ven if the Agreement required [the defendant] to do only what it was already doing, it was undisputed that [the defendant's] behavior became legally

6

required rather than voluntary as a result of the Agreement.").

Defendants also appear to argue that the settlement agreement could not have materially altered the legal relationship between the parties because the agreement "provides no monetary benefit to Plaintiffs."  ECF No. 279, PageID # 6618. Defendants cite no authority for the proposition that a prevailing party must have obtained monetary benefit.  The Ninth Circuit, in fact, has specifically determined that monetary relief is unncessary.  See Fischer, 214 F.3d at 1118.

Defendants seek to minimize the effect of the settlement agreement by arguing that it "does not allow FACE to dictate whether [the Hawaii Department of Transportation] must provide translated versions of the driver's license test, because the parties agreed that: [']The terms of the agreement may be overridden if the federal government orders the state to take action that differs from the terms of this agreement.[']"  ECF No. 279, PageID # 6618.

The settlement agreement does acknowledge the possibility that federal government action may override settlement terms.  But this acknowledgment does not negate the material alteration in the legal relationship between the parties absent action by the federal government inconsistent with the settlement agreement.

With respect to the third prong of the prevailing party

analysis, Plaintiffs correctly argue that they obtained actual relief on the merits of their claims through the settlement agreement.

To satisfy the third prong, "a plaintiff must receive some actual relief that serves the goals of the claim in his or her complaint." Trabajadores, 624 F.3d at 1090.  Plaintiffs' Complaint clearly indicates that their claims were filed to ensure access to translated driver's license examinations.  See, e.g., ECF No. 60, PageID #s 904-05.  Throughout this lawsuit, Plaintiffs have expressed concern with the long period that translated examinations were unavailable following legislation requiring that one new question be added.  See, e.g., ECF No. 60, PageID #s 916-17; ECF No. 134, PageID #s 2121-22, 2141, 2143. The settlement agreement requires Defendants to offer translated driver's examinations for five years in the twelve languages offered at the time of the agreement, and to update translated examinations without any lapse in the availability of translations.  See ECF No. 276-3, PageID # 6358.  These settlement terms provide Plaintiffs with actual relief going directly to their claims.  See Saint John's, 574 F.3d at 1059 ("If the plaintiff has succeeded on any significant issue in litigation which achieved some of the benefit the parties sought in bringing suit, the plaintiff has crossed the threshold to a fee award of some kind." (internal quotation marks and brackets

omitted)).

The settlement agreement also requires Plaintiffs to demonstrate that they were "responsible for causing Defendants to change their position by offering translated examinations in 2014." See ECF No. 276-3, PageID # 6358.  Plaintiffs argue that they were indeed responsible for Defendants' decision to reinstate translated examinations that had previously been offered and to provide additional translations in Chuukese, Marshallese, Ilocano, and Spanish.  See ECF No. 276-1, PageID # 6336.  The court agrees.

Offering translated examinations was clearly not a high priority for Defendants once the translated examinations became unavailable in October 2008.  See, e.g., ECF No. 276-11, PageID # 6384 ("It was just lower priority with all of the other health and safety issues and programs that were moving along.").  Nearly five and a half years passed before translated examinations were reinstated.  For translations previously offered, only a single new question had to be translated and answered!  This lengthy delay cuts against Defendants' contention that the decision to offer translated examinations in March 2014 had nothing to do with Plaintiffs or this litigation.  See, e.g., ECF No. 279, PageID # 6617 ("[B]ecause HDOT had always planned on offering translated driver's license tests, it went forward with that plan without regard to the institution of this lawsuit.").

9

In an internal Department of Transportation memorandum dated July 23, 2013, FACE's efforts are specifically cited as a reason for the decision to reinstate translated examinations. See ECF No. 276-4, PageID #s 6359-60.  The memorandum notes that, from April to June 2013, FACE had repeatedly requested meetings with the Director of the Department of Transportation regarding the translated examinations, and that various state officials met with FACE on April 26, 2013, "[i]n an effort to address FACE's concerns."  See id. at PageID # 6359.  The memorandum requests funding for translated examinations, noting that the decision to reinstate translated examinations was "[b]ased on [the Motor Vehicle Safety Office's] intent to reinstate the translation program, *combined with FACE's recommendations* and [the Office of Civil Rights'] review of compliance with [the Department of Transportation's] Language Access Plan."  See id. at PageID # 6360 (emphasis added).

To support their argument that the decision to offer translated examinations in 2014 had nothing to do with Plaintiffs, Defendants cite deposition testimony from Clifton Harty stating that "[t]he decision to translate was made in 2013, but the translations weren't made available again until March 17th, 2014."  ECF No. 279-2, PageID #6642.  This statement gives absolutely no indication of the motivation behind Defendants' decision to offer translated examinations in 2014.  That is, the

10

testimony does not indicate that the timing of the reinstatement of translations was independent of this lawsuit.

The Department of Transportation memorandum stating that Plaintiffs did indeed have an impact on Defendants' decision to reinstate translated examinations, along with Defendants' general awareness of and concern with Plaintiffs' efforts, undermines Defendants' argument that Plaintiffs were not responsible for the decision to offer translated examinations in 2014. See ECF No. 135-25, PageID # 2344 (email correspondence from Department of Transportation indicating that future meeting with FACE "just got pretty important" because FACE had presented petition for translated examinations). On a more fundamental level, it is difficult to believe that the decision to offer translated examinations in 2014 had nothing to do with Plaintiffs when there is remarkable overlap between Plaintiffs' involvement and Defendants' efforts to reinstate translated examinations after little to no progress for many years.

Defendants argue, in the alternative, that even if Plaintiffs caused Defendants to change their priorities, "it was unquestionably FACE's advocacy and not its litigation that caused any such change." ECF No. 279, PageID # 6623. Defendants note that the July 23, 2013, Department of Transportation memorandum requesting funding for translated examinations preceded the start of this litigation, making it "illogical to claim that this

litigation caused HDOT to issue the memorandum." See id. at
PageID #s 6622-23.

This court is unpersuaded by Defendants' argument.  It
was because Plaintiffs' "advocacy" efforts did not immediately
yield results that Plaintiffs proceeded with litigation.
Translated examinations were not reinstated until March 2014,
several months after this lawsuit was filed.  If it was
Plaintiffs' mere request that caused translations to be
reinstated, it is hard to understand why the translations were
not reinstated sooner and why this lawsuit has been so
contentious.

Plaintiffs demonstrate that they are prevailing parties
under Ninth Circuit case law and the settlement agreement.  As a
result, Plaintiffs are entitled to reasonable attorneys' fees.
See 42 U.S.C. § 1988(b).

## V.        PLAINTIFFS ARE ENTITLED TO $50,000.00 IN ATTORNEYS' FEES.

The calculation of an award of reasonable attorneys'
fees is generally based on the traditional "lodestar" method set
forth in Hensley v. Eckerhart, 461 U.S. 424 (1983).  See Fischer,
214 F.3d at 1119.  A reasonable fee is determined by multiplying
"the number of hours reasonably expended on the litigation" by "a
reasonable hourly rate."  Hensley, 461 U.S. at 433 (1983).  The
resulting lodestar figure is presumptively reasonable.  See
Morales v. City of San Rafael, 96 F.3d 359, 363 (9th Cir. 1996);

Cunningham v. Cnty. of Los Angeles, 879 F.2d 481, 484 (9th Cir. 1988).

A court may adjust the lodestar figure based on several factors, including: the time and labor involved, the preclusion of other employment by the attorney due to acceptance of the case, the customary fee, time limitations imposed by the client or the circumstances, the "undesirability" of the case, the nature and length of the professional relationship with the client, and awards in similar cases.  See Booth v. Wong, Civ. No. 10-00680 DKW-RLP, 2015 WL 4663994, at *2 (D. Haw. July 17, 2015), report and recommendation adopted, Civ. No. 10-00680 DKW-RLP, 2015 WL 4676343 (D. Haw. Aug. 5, 2015); see also Fischer, 214 F.3d at 1119; Kerr v. Screen Extras Guild, Inc., 526 F.2d 67, 70 (9th Cir. 1975).

In this case, the settlement agreement reached between the parties limits any fee award to $50,000.00.  See ECF No. 276-3, PageID # 6358.

### A.   Reasonable Hourly Rate.

The reasonableness of an hourly rate is determined based on consideration of the experience, skill, and reputation of the attorney requesting fees.  See Webb v. Ada Cnty., 285 F.3d 829, 840 (9th Cir. 2002); Robinson v. Plourde, 717 F. Supp. 2d 1092, 1097 (D. Haw. 2010).  A reasonable hourly rate should reflect the prevailing market rates in the community.  Jordan v.

13

Multnomah Cnty., 815 F.2d 1258, 1262 (9th Cir. 1987); Robinson,

717 F. Supp. 2d at 1097 (D. Haw. 2010).

Plaintiffs have requested the following hourly rates

for work performed by Alston Hunt Floyd & Ing and Hawaii

Appleseed Center for Law and Economic Justice:

| Name | Title | Rate/Hour | Years of Experience |
|---|---|---|---|
| Paul Alston | Partner | $592 | 43 |
| Gavin Thornton (at Appleseed) | Director | $240 | 12 |
| J. Blaine Rogers | Partner | $325 | 8 |
| John-Anderson L. Meyer | Of Counsel | $250 | 8 |
| Claire Wong Black | Associate | $225, $250 | 8 |
| Michelle N. Comeau | Associate | $210 | 8 |
| Lucas Myers | Associate | $185 | 5 |
| Zachary DiIonno | Associate | $165, $175 | 1 |
| Kelly Guadagno | Paralegal | $125, $130 | 20 |
| Iris Takane | Paralegal | $145 | 24 |
| Brian Morrow, Joshua Michaels, and Kenneth Kaufman | Law Clerks | $125 | 0 |
| Jya Bunch | Document Analyst | $50 | Not provided |

ECF No. 276-1, PageID # 6340.  Defendants do not specifically

object to the reasonableness of any hourly rate.

This court's knowledge of the community's prevailing

rates, the hourly rates generally granted by the court, the

14

court's familiarity with this case, and the information provided by counsel support the conclusion that the hourly rates requested for Gavin Thornton and Jya Bunch are reasonable.  See BlueEarth Biofuels, LLC v. Hawaiian Elec. Co., Civ. No. 09-00181 LEK-KSC, 2015 WL 881577, at *13 (D. Haw. Feb. 27, 2015) (permitting rate of $50 per hour for document analyst); Valencia v. Carrington Mortgage Servs., LLC, Civ. No. 10-00558 LEK-RLP, 2013 WL 3223628, at *8 (D. Haw. June 25, 2013) (permitting rate of $250 per hour for partner with twelve years of experience).

This court need not expressly approve the hourly rates for the attorneys, law clerks, and paralegals at Alston Hunt because, even if this court only approved lower rates, Plaintiffs would be entitled to $50,000 in fees.  Without ruling on whether the requested hourly rates for the Alton Hunt attorneys, law clerks, and paralegals are or are not reasonable, this court, recognizing that it makes no difference in this case, will treat the applicable hourly rates as lower than requested.

| Name | Requested Hourly Rate | Hourly Rate Applied Here |
|------|----------------------|--------------------------|
| Paul Alston | $592 | $425 |
| J. Blaine Rogers | $325 | $250 |
| John-Anderson L. Meyer | $250 | $200 |
| Claire Wong Black | $225, $250 | $190 |
| Michelle N. Comeau | $210 | $190 |
| Lucas Myers | $185 | $175 |

15

| Zachary DiIonno | $165, $175 | $140 |
| Kelly Guadagno (paralegal) | $125, $130 | $95 |
| Iris Takane (paralegal) | $145 | $100 |
| Brian Morrow, Joshua Michaels, and Kenneth Kaufman | $125 | $100 |

See Booth, 2015 WL 4663994, at *3-4 (permitting rates of $500 per hour, $100 per hour, and $95 per hour for Paul Alston, Iris Takane, and Kelly Guadagno, respectively); BlueEarth, 2015 WL 881577, at *13 (permitting rate of $100 for law clerks, $140 for a first-year associate, $190 for an attorney with 8 years of experience, and $425 for Paul Alston); Valencia, 2013 WL 3223628, at *8 (permitting rate of $175 per hour for a fifth-year associate).

**B.   Reasonable Hours Expended.**

The party seeking fees "bears the burden of documenting the appropriate hours expended in the litigation and must submit evidence in support of those hours worked." Gates v. Deukmejian, 987 F.2d 1392, 1397 (9th Cir. 1992).  The opposing party then has the burden of rebuttal "that requires submission of evidence to the district court challenging the accuracy and reasonableness of the hours charged or the facts asserted by the prevailing party in its submitted affidavits."  Id. at 1397-98.  Work that is "excessive, redundant, or otherwise unnecessary" is not

16

compensable.  See Hensley, 461 U.S. at 434; BlueEarth, 2015 WL 881577, at *14.  The district court has "a great deal of discretion in determining the reasonableness" of a fee request. Gates, 987 F.2d at 1398.

Defendants object to certain expenditures of time on the ground that Plaintiffs' counsel violated the Rules of Professional Conduct.  According to Defendants, "The time records submitted by Plaintiffs show that their attorneys (1) knowingly failed to turn over relevant evidence that had been requested in discovery, (2) improperly contacted State officials concerning the subject matter of this lawsuit without the consent of the Attorney General's Office, (3) misrepresented the extent of their collaboration with the United States Department of Justice, and (4) billed for time spent speaking to the press about this litigation."  ECF No. 279, PageID # 6625.  Many, if not all, of these arguments are irrelevant to Plaintiffs' fee request.

For example, Defendants' argument that Plaintiffs' counsel deliberately failed to produce various YouTube videos involves a discovery issue immaterial to the present motion. Even if this court were inclined to address purported discovery violations at this time, Defendants fail to demonstrate that the YouTube videos in question were responsive to any discovery request.  While the two videos are recordings of oral communications, they do not appear to be "written or electronic

17

communications between [Plaintiffs] and the Hawaii Department of Transportation." See ECF No. 279-4, PageID # 6653; ECF No. 279, PageID # 6626.

Even if the court accepted all of Defendants' objections to Plaintiffs' fee request and excluded the time associated with those objections, Plaintiffs would be entitled to the requested fee award of $50,000.00.[1]  Plaintiffs incurred far more than $50,000.00 in this litigation.  After reviewing the timesheets submitted by Plaintiffs, this court concludes that at least $50,000.00 was reasonably and necessarily incurred.[2]

---

[1] In their opposition, Defendants say that they "challenge all time entries in the Motion."  ECF No. 279, PageID # 6633. Local Rule 54.3(f) requires that "[t]he responsive memorandum in opposition to a motion for attorneys' fees and related nontaxable expenses shall identify with specificity all disputed issues of law and fact, each disputed time entry, and each disputed expense item."  Defendants may not rely on a blanket objection to all time entries.  Therefore, any time entry not specifically identified is not considered objected to by Defendants.

[2] Defendants argue that this court should require Plaintiffs' counsel to resubmit their timesheets to include only compensable entries.  That request is denied.

The case Defendants rely on, De-Occupy Honolulu v. City & County of Honolulu, Civ. No. 12-00668 JMS-KSC, 2015 WL 1013834 (D. Haw. Mar. 9, 2015), involved timesheets that were "rife with non-compensable entries."  See Civ. No. 12-668, ECF No. 221, PageID # 4867.  That is not the case here.

A party seeking attorneys' fees "should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary," Hensley, 461 U.S. at 434, but the mere inclusion of an allegedly noncompensable entry does not necessarily require resubmission of timesheets.  Plaintiffs are not obligated to imagine everything Defendants may complain about and to submit complaint-free timesheets.

Although many different combinations of time entries could lead to an award of $50,000.00 in reasonable and necessary fees for Plaintiffs, this court outlines the following as one example of a $50,0000.00 fee award:

| Name | Litigation Phase | Hours | Rate | Total |
|---|---|---|---|---|
| **Paul Alston** | | | $425 | |
| | Motions Practice | 0.5 | | $212.50 |
| | Attending Court Hearings | 3.7 | | $1,572.50 |
| **Gavin Thornton** | | | $240 | |
| | Depositions | 24.2 | | $5,808.00 |
| **Claire Wong Black** | | | $190 | |
| | Depositions | 92.2 | | $17,518.00 |
| | Motions Practice | 101.3 | | $19,247.00 |
| | Attending Court Hearings | 5.2 | | $988.00 |
| | Trial Preparation | 14.9 | | $2,831.00 |
| **Lucas Myers** | | | $175 | |
| | Depositions | 3.3 | | $577.50 |
| | Motions Practice | 8 | | $1,400.00 |
| | | | | **$50,154.50** |

IV.        **DEFENDANTS' STANDING ARGUMENT IS REJECTED.**

On May 15, 2014, with trial scheduled to begin less

than two weeks later, Defendants filed a "Request to Discuss

Threshold Matter," seeking to challenge FACE's standing.  See ECF

No. 262.  Because the parties ultimately reached a settlement

agreement, that request was never ruled on by this court.

In opposition to Plaintiffs' motion for attorneys'

fees, Defendants seek to resurrect their "Request to Discuss

Threshold Matter," again contending that FACE lacks standing for

the reasons articulated in that request.  Defendants now add that

this court's alleged lack of jurisdiction extends to any award of

attorneys' fees to FACE.  ECF No. 279, PageID # 6610.  As

Defendants put it, "Because FACE lacked standing to maintain this

lawsuit, it also lacks standing to be deemed a prevailing party

in order to collect attorneys' fees."  Id.

This court rejects Defendants' argument.  The issue of

standing is no longer relevant, given the settlement agreement

under which this court retains jurisdiction to resolve post-

settlement matters.  See Kokkonen v. Guardian Life Ins. Co. of

Am., 511 U.S. 375, 381 (1994) ("If the parties wish to provide

for the court's enforcement of a dismissal-producing settlement

agreement, they can seek to do so.").  Defendants agreed in the

settlement agreement that Plaintiffs could seek attorneys' fees,

and the court is considering Plaintiffs' motion pursuant to that

agreement.  See ECF No. 276-3, PageID # 6358.

        Defendants were (or at least should have been) fully
aware that agreement to the settlement of Plaintiffs' claims
would obviate the need for this court to address Defendants'
"Request to Discuss Threshold Matter," which raised the same
standing argument Defendants now reassert.  While this court sees
no need to address that request at this time, the court is
surprised to see Defendants brimming with confidence that their
request would have been granted.

        Moreover, Defendants had ample opportunity to challenge
FACE's standing earlier.  Defendants unsuccessfully challenged
FACE's standing on two prior occasions.  See ECF Nos. 80, 151.
Defendants argued that their third attempt, the "Request to
Discuss Threshold Matter" filed shortly before trial, was
triggered by Plaintiffs' counsel's statement in an opposition to
a motion in limine that "FACE is an organization; it has no
national origin."  See ECF No. 262, PageID # 6170.  The status of
FACE as an organization, however, was apparent from the start of
the lawsuit.

        It is also unclear to this court how Defendants can
plausibly cabin their standing argument to Plaintiffs'
entitlement to attorneys' fees.  While contending that this court
lacks jurisdiction to award Plaintiffs attorneys' fees,
Defendants concede that this court "approved the Settlement

Agreement and retain[s] enforcement." ECF No. 279, PageID # 6609. Under Defendants' framework, if this court lacks jurisdiction to award attorneys' fees, a power specifically contemplated by the terms of the settlement agreement, it should likewise lack jurisdiction to enforce any of the other terms of the settlement agreement.

In their opposition, Defendants go so far as to state that they only agreed that FACE could seek attorneys' fees "because [they] knew that any prospective award of attorneys' fees would be a violation of the United States Constitution." ECF No. 279, PageID #s 6617-18. This is, to put it charitably, a strange argument. Defendants are saying either that (1) Defendants agreed that FACE could, if it won its fee motion, get what Defendants consider an unconstitutional fee award, or (2) Defendants were agreeing to something while all along planning to disavow the agreement as prohibited. The latter is not at all the same as arguing that Plaintiffs were not prevailing parties. This court will not permit Defendants to reap the benefits of the settlement agreement (e.g., avoidance of trial and the potential for liability, including a money judgment and an even greater fee award, plus costs), while seeking to avoid the burdens imposed by the settlement agreement (e.g., the potential for attorneys' fees).

Defendants' standing argument is rejected.

## V.      CONCLUSION.

Plaintiffs' motion for attorneys' fees is granted.

Plaintiffs are awarded $50,000.00 in fees.


IT IS SO ORDERED.

DATED: Honolulu, Hawaii, September 1, 2015.



 /s/ Susan Oki Mollway
Susan Oki Mollway
Chief United States District Judge


Faith Action for Community Equity, et al. v. Hawaii Department of Transportation, et al.; Civ. No. 13-00450 SOM/RLP; ORDER GRANTING MOTION FOR ATTORNEYS' FEES